SAMUEL ZWICK, Appellee, v. G. W. JOHNS, Appellant.

1. **Estates of Decedents:** ELECTION OF WIDOW TO TAKE HOMESTEAD. Where a homestead was occupied by a widow and her minor children for nearly six years after the death of her husband, *held*, that the presumption, arising from such occupancy, of an election to take the homestead for life in lieu of her distributive share, was not overcome by evidence that she, at one time, commenced proceedings to have her distributive share set off to her, but which she afterwards abandoned, and determined to occupy the homestead in lieu of such share; that she and a husband by a subsequent marriage gave a quitclaim deed to the land as security, and at the same time executed a mortgage upon the unassigned dower interest of the wife, and that the latter, about an hour before she died, but when very feeble, promised one to whom she had become indebted a mortgage upon the land.

2. ———: HOMESTEAD: ABANDONMENT. After her occupancy of the homestead for nearly six years, the wife being in ill health and unable to attend to the duties of the farm, she and her husband by the subsequent marriage, sold their household goods, leased the farm for two years, with the intention of returning at the end of that time and again occupying the homestead, and went to another state, where the wife died in less than a year, and none of the family returned to again occupy the homestead. *Held*, that the homestead was not abandoned, and that the title thereto descended to the wife's children.

3. ——: ——: ——: EXECUTION SALE: ESTOPPEL. The fact that the defendant purchased the premises at execution sale upon the faith of said lease of the land, and the removal of the family to another state, and in ignorance of any claim of a homestead right therein, *held*, not to operate as an estoppel against the plaintiff's claim, as guardian for the minor children of the wife, to have his title to said property quieted as against the defendant.

*Appeal from Cherokee District Court.*—Hon. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, OCTOBER 18, 1893.

ACTION in equity to quiet title to certain lands. From a judgment and decree for the plaintiff, the defendant appeals.—*Affirmed.*

*Ernest C. Herrick*, for appellant.

*J. D. F. Smith*, for appellee.

KINNE, J.—The facts of this case, disclosed by the pleadings and evidence, are that one John R. Smith died on May 28, 1882, seized of eighty acres of land in Cherokee county, Iowa. He left a widow, Dena A. Smith, and four minor children. At the time of his death, and for several years prior thereto, Smith and his family had lived upon and occupied said premises as their homestead. After his death the widow and children continued to occupy said land as a homestead until the fall of 1883, when the widow married one Joseph Prinkey. After that they all occupied said premises as their home until early in 1888, when they sold all of their personal property, except bedding, and went to Freeport, Illinois, and none of them ever returned to this state. Mrs. Prinkey died at Freeport in the fall of 1888, leaving surviving her the four said minors and her husband. The plaintiff was appointed in this state as the guardian of said minors, and brings

1. ESTATES of decedents: election of widow to take homestead.

this action to restrain the defendant from interfering with his possession of the premises in question. Mrs. Prinkey and her husband, prior to leaving Iowa, became indebted to the defendant. He reduced his claim to judgment, caused an execution to issue thereon, and thereunder sold an undivided one third of said eighty acres of land, and in due time received a sheriff's deed therefor. It is averred in the petition that Mrs. Prinkey never elected to take any portion of said land as her property in fee simple, but occupied the same as a homestead. The answer denies that allegation of the petition, and alleges that prior to the levy of the defendant's attachment Mrs. Prinkey and her husband had abandoned the premises as a homestead. It is also claimed that the defendant acted thereon, and without any notice of any claim of a homestead right by either Mrs. Prinkey or her husband. That the defendant, in good faith, purchased the land at execution sale, and that thereby the plaintiff is estopped to claim the same.

The facts touching the alleged abandonment of the homestead are that in 1884 the widow filed her petition in the circuit court of Cherokee county, asking to have her distributive share in said real estate set off to her; that afterwards she changed her mind, and abandoned said proceedings, and determined to occupy the homestead in lieu of such distributive share; that she so told her counsel and various relatives; that in August, 1887, she and her husband quitclaimed all their right and interest in the land to one Groff, said deed being in fact made as security for a debt. At the same time they executed a mortgage on the unassigned dower interest of Mrs. Prinkey in the eighty acres to the same party to secure the payment of a note. In the spring of 1888, Mrs. Prinkey was suffering from disease to such an extent as to be unable to perform her work upon the farm, and she, acting in her own right and as guardian, leased the land to Joseph M. Smith for a

term of two years.   The family then disposed of all
their personal property, except bedding, and went to
Freeport, with the intention of having Mrs. Prinkey
placed under medical treatment, and expecting and
intending, when she recovered, and at the termination
of the lease, to return to and again occupy the farm as
their homestead.   While in Freeport she grew worse,
and died in the fall of 1888.   During her stay in Free-
port, and but an hour before she died, she told one
Ball, to whom she had become indebted, that she would
give him a mortgage on her interest in this land to
secure him.   The mortgage was never executed.

I. Two questions are presented for our determina-
tion: *First*, did the acts of Mrs. Prinkey show an elec-
tion on her part to take a homestead in the land in lieu of
her distributive share? and, *second*, if she did so elect,
did she afterward abandon the homestead? Under Code,
section 2440, Mrs. Prinkey became entitled to have set
apart to her as the widow of Smith one third in value
of the land of which he died seized.   Under section
2007 she had the right to continue to occupy the home-
stead until it was otherwise disposed of according to
law; and under section 2008 she might elect to retain
the homestead for life in lieu of her distributive share
in her deceased husband's real estate.   Now, what acts
will constitute such an election?   We do not deem it
necessary to review the many cases touching this ques-
tion, for the reason that this court, in a recent case,
has, after full consideration of them, established a rule,
which we think is well supported in reason and
authority, as to what occupancy of the homestead will
be considered an election to take a homestead for life
in lieu of a distributive share.   This rule as laid down
in *Egbert v. Egbert*, 85 Iowa, 525, is that when, under
all the circumstances, the survivor has occupied the
homestead for a reasonable time in which to make an

election under the statute, and has failed to have the distributive share set apart, or otherwise made an election, the presumption of an election from such occupancy arises. Such presumption will then prevail, unless overcome by proof showing election to the contrary. Under this rule it must be held that the surviving wife in this case had elected to retain the homestead for life in lieu of her distributive share of her deceased husband Smith's estate. Smith died in May, 1882. There was at that time nothing in the physical condition of his surviving wife, nor in her surroundings, which in any way prevented her exercising her election within a reasonable time after his death. She remarried in 1883, and occupied the premises as a homestead until February, 1888, and was in fact thereafter in the possession and occupancy of the premises by her tenant until her death in the fall of the same year. She had once begun proceedings to have her distributive share set apart to her, but had changed her mind, and abandoned them. She had executed a deed of the premises as security. She executed a mortgage on her undivided share to secure a debt, and just before her death she proposed to mortgage her interest in the land. Are such facts sufficient to show an election contrary to that presumed from her occupancy of the land for six years after her husband's death? We think not. The fact that she had at once commenced proceedings to have her share set apart to her, and had abandoned the same, after being fully advised of her rights, and determined to retain her homestead right is a cogent reason for believing that she did not thereafter, even by executing the deed and mortgage, intend to take a distributive share. It must be remembered, when these instruments were executed she was in feeble health; it was only about a year before her death. Nor do we give much weight to the fact that an hour before her death she was proposing to mortgage her interest in the

land. Such evidence, even if admissible, is of little force, inasmuch as it appears she was near dissolution, and not able to speak above a whisper. The evidence shows that after she abandoned the suit which she had commenced to have her distributive share set apart, she always expressed herself as intending to take the homestead; that she left the farm only because forced to do so by reason of ill health; that she leased it, acting for herself in the manner chosen. We can not review all of the evidence, but, from a careful examination of all of it, we are satisfied that the presumption of an election to take the homestead which arises from occupancy, has not been overcome by evidence of an election to take a distributive share. This case is clearly distinguishable from *Wilcox v. Wilcox, ante,* page 388. In that case an election to take the distributive share had in fact been made, and it was sought to withdraw it after the widow had mortgaged such share. It was held she could not thus defeat the mortgage security.

II. Was the homestead abandoned? The evidence is without conflict that Mrs. Prinkey and the family intended to return, at least by the time the lease expired. The removal to Freeport was for a temporary purpose, to be treated for the disease with which Mrs. Prinkey was afflicted. There was a fixed and definite intention to return to the homestead, which was only defeated by the death of Mrs. Prinkey. We discover no sufficient evidence to show an abandonment. We need not cite cases, as the facts in each case are different, and each must, in a large measure, be determined upon its own facts.

2. ——: homestead: abandonment.

III. The decree below, finding title to the premises in controversy in the minor heirs of John R. Smith, as in all other respects, is correct. The claim of estoppel is without merit. There was no evidence to show that the defendant was misled into doing any act in connection with

3. ——: ——: ——: execution sale: estoppel.

acquiring a deed to the land by any act or statement of Mrs. Prinkey. The mere fact that he knew that she had leased the land and moved to another state, and that he was ignorant of any claim of homestead right therein, can not be held to work as an estoppel to the plaintiff's claim. AFFIRMED.